IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEVERAGED INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NASDAQ OMX GROUP, INC.,<br>NASDAQ OMX BX, INC.,<br>NASDAQ OMX BX EQUITIES LLC,<br>NASDAQ OMX PHLX, INC.,<br>THE NASDAQ STOCK MARKET<br>LLC, PROSHARE ADVISORS LLC,<br>PROSHARES TRUST I, and<br>PROSHARES TRUST II,<br><br>Defendants. | Civil Action No. 11-CIV-3203<br><br>DEMAND FOR JURY TRIAL |



## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Leveraged Innovations, LLC ("Leveraged Innovations" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for patent infringement against Defendants NASDAQ OMX Group, Inc. ("NASDAQ OMX"); NASDAQ OMX BX, Inc. ("NASDAQ BX"); NASDAQ OMX BX Equities LLC ("NASDAQ BX Equities"); NASDAQ OMX PHLX, Inc. ("NASDAQ PHLX"); The NASDAQ Stock Market LLC ("NASDAQ Stock Market") (collectively, "NASDAQ"); ProShares Trust I ("ProShares I"); ProShares Trust II ("ProShares II"); and ProShares Advisors LLC ("ProShares Advisors") (collectively, "ProShares") (NASDAQ and ProShares are collectively referred to herein as "Defendants"), and alleges as follows:

## NATURE OF THE SUIT

1.      This is a civil action based upon and arising under the Patent Laws of the United States for the willful infringement of United States Patent Nos. 7,698,192 ("the '192 Patent") and 7,917,422 ("the '422 Patent") (collectively, the "Patents-in-Suit"), duly and legally issued on April 13, 2010 and March 29, 2011, respectively. Copies of the '192 and '422 Patents are attached hereto as Exhibits 1 and 2, respectively.

2.      The Patents-in-Suit relate to Exchange Traded Funds, or "ETFs." ETFs are investment funds that incorporate, for example, stocks, commodities, and/or bonds. In many cases, ETFs mirror stock market indexes, but ETFs may also track, for example, non-security indexes, bonds, and/or currencies. ETFs are similar in many ways to traditional mutual funds, which can offer easy portfolio diversification to investors. Unlike mutual funds, however, ETFs can be bought and sold throughout the day like ordinary stocks.

3.      The Patents-in-Suit specifically relate to computer systems for creating and exchanging shares in "leveraged" ETFs. Leveraged ETFs are ETFs that use financial derivatives and/or debt to achieve increased returns when compared with non-leveraged ETFs. For example, leveraged ETFs may use borrowed capital in addition to investor equity to provide investors with an increased level of investment exposure.

4.      Defendant NASDAQ, the largest electronic screen-based equity securities trading market in the United States, utilizes the inventions of the Patents-in-Suit to facilitate the exchange of millions of shares of leveraged ETFs per day, including shares of leveraged ETFs created and managed by defendant ProShares. ProShares, which holds itself out as the world's largest manager of leveraged ETFs, creates each of its leveraged ETF's, at least 121 in all, utilizing the inventions of the '192 Patent, and lists those leveraged ETFs on stock exchanges in

New York City, including on the NASDAQ stock exchange. NASDAQ and ProShares infringe the patents despite their express knowledge of, and refusals to take licenses under, the '192 Patent.

## THE PARTIES

5.  Plaintiff Leveraged Innovations is a limited liability corporation organized and existing under the laws of Delaware, having its principal offices at 450 Park Avenue, New York, New York. Leveraged Innovations is the sole assignee of all rights, title, and interest in and to the Patents-in-Suit, having obtained such rights, title, and interest from Kenneth Kiron ("Kiron"), an inventor of the Patents-in-Suit and the founder, President and Chief Executive Officer of Leveraged Innovations. Kiron has been in the business of, among other things, designing new and innovative financial products for approximately the past 20 years.

6.  Upon information and belief, defendant NASDAQ Stock Market is a limited liability company organized and existing under the laws of Delaware. NASDAQ Stock Market operates the NASDAQ stock exchange in New York that, among other things, utilizes the inventions of the Patents-in-Suit to facilitate the exchange of shares in numerous leveraged ETFs, including all of the at least 121 leveraged ETFs created and managed by ProShares. NASDAQ Stock Market is a wholly-owned subsidiary of NASDAQ OMX.

7.  Upon information and belief, defendant NASDAQ BX Equities is a limited liability company organized and existing under the laws of Delaware. NASDAQ BX Equities operates the NASDAQ OMX BX stock exchange that, among other things, utilizes the inventions of the Patents-in-Suit to facilitate the exchange of shares in numerous leveraged ETFs, including all of the at least 121 leveraged ETFs created and managed by ProShares. NASDAQ BX Equities is a wholly-owned subsidiary of NASDAQ OMX.

8. Upon information and belief, defendant NASDAQ BX is a limited liability company organized and existing under the laws of Delaware. NASDAQ BX (1) operates, (2) directs and controls NASDAQ BX Equities' operation of, and/or (3) with knowledge and intent, actively induces NASDAQ BX Equities to operate the NASDAQ OMX BX stock exchange that, among other things, utilizes the inventions of the Patents-in-Suit to facilitate the exchange of shares in numerous leveraged ETFs, including all of the at least 121 leveraged ETFs created and managed by ProShares. NASDAQ BX is a wholly-owned subsidiary of NASDAQ OMX.

9. Upon information and belief, defendant NASDAQ PHLX is a limited liability company organized and existing under the laws of Delaware. NASDAQ PHLX operates the NASDAQ OMX PSX stock exchange that, among other things, utilizes the inventions of the Patents-in-Suit to facilitate the exchange of shares in numerous leveraged ETFs, including all of the at least 121 leveraged ETFs created and managed by ProShares. NASDAQ PHLX also facilitates the exchange of numerous derivatives having prices related to the prices of leveraged ETFs. NASDAQ PHLX is a wholly-owned subsidiary of NASDAQ OMX.

10. Upon information and belief, defendant NASDAQ OMX is a corporation organized and existing under the laws of Delaware, having its principal offices at One Liberty Plaza, New York, New York. NASDAQ OMX (1) operates, (2) directs and controls its subsidiaries' operation of, and/or (3) with knowledge and intent, actively induces its subsidiaries to operate the NASDAQ, NASDAQ OMX BX, and NASDAQ OMX PSX stock exchanges (collectively, the "NASDAQ Stock Exchange") that, among other things, utilize the inventions of the Patents-in-Suit to facilitate the exchange of shares in numerous leveraged ETFs, including all of the at least 121 leveraged ETFs created and managed by ProShares.

11.     Upon information and belief, defendants ProShares I and II are statutory trusts organized and existing under the laws of Delaware, having their principal offices at 7501 Wisconsin Avenue, Suite 1000, Bethesda, Maryland.  ProShares I and II are each registered with the SEC as an open-end management investment company under the Investment Company Act of 1940.  ProShares has created at least 121 leveraged ETFs utilizing the inventions of the '192 Patent including, without limitation, the ProShares UltraPro QQQ, ProShares UltraPro Short QQQ, ProShares Ultra Nasdaq Biotechnology and ProShares UtraShort Nasdaq Biotechnology leveraged ETFs listed on the NASDAQ stock exchange in New York.

12.     Upon information and belief, defendant ProShare Advisors is a limited liability company existing under the laws of Maryland, having their principal offices at 7501 Wisconsin Avenue, Suite 1000, Bethesda, Maryland.  ProShare Advisors utilizes the inventions of the '192 Patent in connection with the supervision of at least 121 leveraged ETFs created by ProShares including, without limitation, the ProShares UltraPro QQQ, ProShares UltraPro Short QQQ, ProShares Ultra Nasdaq Biotechnology and ProShares UtraShort Nasdaq Biotechnology leveraged ETFs listed on the NASDAQ stock exchange.  Proshare Advisors is, among other things, responsible for decisions to buy and sell securities for each ProShares fund, and determines the investments each fund makes and the techniques it employs.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement.  The claims arise under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, and in particular §§ 271, 281, 283, 284 and 285.  This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over Defendants, and venue is proper in this judicial district, pursuant to 28 U.S.C. §§ 1391 and 1400(b), because a substantial part of the acts, events, and/or omissions giving rise to Leveraged Innovations' claims against Defendants occurred in this judicial district, and because Defendants have regular and established places of business, and/or conduct continuous and systematic business, in this judicial district. For example, and without limitation, defendant NASDAQ is located in this judicial district and operates stock exchanges that utilize the inventions of the Patents-in-Suit in this judicial district, and defendant ProShares lists numerous leveraged ETFs created utilizing the inventions of the '192 Patent on stock exchanges located in this judicial district, including on the NASDAQ stock exchange.

## FACTUAL BACKGROUND

### NASDAQ Infringes the Patents-in-Suit Despite Having Express Knowledge that it Infringes the Patents

15. NASDAQ owns and operates the NASDAQ Stock Exchange which is, upon information and belief, the largest electronic screen-based equity securities trading market in the United States and the second-largest by market capitalization in the world.

16. NASDAQ utilizes a computerized trading platform, *i.e.*, the NASDAQ Market Center utilizing INET technology, that (a) displays data representing shares of, among other types of securities, leveraged ETFs for all NASDAQ-, NYSE-, AMEX- and other regional-listed exchanges, including the at least 121 leveraged ETFs created and managed by ProShares as described below in paragraphs 19-24, (b) processes the exchange of shares of such leveraged ETFs at prices related to the intra-day prices of the securities within the leveraged ETF, and (c) transmits data indicative of such exchanges of trades to an electronic clearing computer, *i.e.*,

clearing computers at the Depository Trust and Clearing Corporation. In 2010 alone, billions of shares of leveraged ETFs created using the inventions of the '192 Patent were exchanged on the NASDAQ Stock Exchange using the inventions of the Patents-in-Suit.

17. In November 2010, Kiron and NASDAQ commenced discussions concerning matters related to the inventions of the Patents-in-Suit. Kiron and NASDAQ met in person at least three times (the most recent being on February 3, 2011) during which meetings Kiron explained to NASDAQ how it infringes the '192 Patent and invited NASDAQ to enter into licensing discussions. Without providing any arguments to rebut Kiron's infringement position, NASDAQ refused to take a license.

18. Despite declining to take a license under the '192 Patent, and despite being on express notice that it infringes the '192 Patent, NASDAQ continues to utilize the inventions of the Patents-in-Suit to facilitate the exchange of shares in leveraged ETFs, including shares in the 121 leveraged ETFs created and managed by defendant ProShares.

**ProShares Infringes the '192 Patent Despite Having Express Knowledge of the Patent**

19. ProShares states on its web site that it is "the world's largest manager of leveraged and inverse funds" and that it has created and manages 121 leveraged ETFs. These include, without limitation, the ProShares UltraPro QQQ, ProShares UltraPro Short QQQ, ProShares Ultra Nasdaq Biotechnology and ProShares UtraShort Nasdaq Biotechnology funds listed on the NASDAQ stock exchange. Approximately 80 million shares of ProShares-created leveraged ETFs are traded per day on stock exchanges in the United States, including in New York City.

20. ProShares has utilized and continues to utilize the inventions claimed in the '192 Patent to create its leveraged ETFs. For example, according to the prospectus for the ProShares

7

UltraPro QQQ leveraged ETF, ProShare "uses a mathematical approach to investing [to determine] . . . the type, quantity and mix of investment positions that the Fund should hold to approximate the performance of its benchmark."

21. The prospectus for the ProShares UltraPro QQQ leveraged ETF also states that "[t]he Fund invests in equity securities and derivatives that ProShare Advisors believes, in combination, should have similar daily return characteristics as three times (300%) the daily return of the [NASDAQ-100] Index" which "includes 100 of the largest domestic and international non-financial companies listed on The NASDAQ Stock Market based on market capitalization."

22. ProShares weights the selected securities within each of its leveraged ETFs on a daily basis in order to achieve a high degree of correlation with the index it seeks to track and in order to keep leverage consistent with its one-day investment objective. For example, according to the prospectus for the ProShares UltraPro QQQ leveraged ETF, "[i]n order to achieve a high degree of correlation with its benchmark, the Fund seeks to rebalance its portfolio daily to keep exposure consistent with its investment objective."

23. The ProShares leveraged ETFs are each configured so that shares in each fund can be created and redeemed as needed, thereby creating arbitrage opportunities to help keep share prices in line with the underlying net asset value. For example, according to the prospectus for the ProShares UltraPro QQQ leveraged ETF, "Fund Shares will be listed for trading on The NASDAQ Stock Market (the 'Exchange') and can be bought and sold in the secondary market at market prices. The market prices of Shares will fluctuate in response to changes in net asset value ('NAV') and supply and demand for Shares. ProShare Advisors cannot predict whether Shares will trade above, below or at their NAV. Given the fact that Shares can be created and

redeemed in Creation Units, ProShare Advisors believes that large discounts or premiums to the NAV of Shares should not be sustained. The Fund's investment results are measured based upon the daily NAV of the Fund."

24.     ProShares creates and manages its leveraged ETFs despite knowing about the '192 Patent and, upon information and belief, despite knowing that it infringes the '192 Patent, and despite never licensing the '192 Patent. In September 2010, Kiron commenced discussions with ProShares concerning technologies related to the inventions of the '192 Patent. Kiron informed ProShares of the existence of the '192 Patent and offered ProShares a license under the Patent. ProShares, however, refused to take a license.

## COUNT I: INFRINGEMENT OF THE PATENTS-IN-SUIT BY NASDAQ

25.     Leveraged Innovations incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

26.     NASDAQ has infringed and continues to infringe the Patents-in-Suit, both directly and indirectly, by making, using, selling, making available for use by others, and/or offering for sale its NASDAQ Stock Exchange that incorporates the inventions of the Patents-in-Suit and facilitates the exchange of shares in leveraged ETFs, including but not limited to, the at least 121 leveraged ETFs created and managed by ProShares utilizing the inventions of the '192 Patent. Shares in leveraged ETFs are exchanged using the infringing NASDAQ Stock Exchange in this judicial district and elsewhere.

27.     Leveraged Innovations has been and will continue to be injured by NASDAQ's past and continuing infringement of the Patents-in-Suit and is without adequate remedy at law. Leveraged Innovations is therefore entitled to a permanent injunction restraining and enjoining NASDAQ and its officers, directors, principals, agents, servants, employees, successors, and

assigns, and all persons and entities in active concert or participation with them, from infringing, and from contributing to and/or inducing the infringement of, the claims of the Patents-in-Suit.

28.     NASDAQ infringes the Patents-in-Suit with express knowledge of Leveraged Innovations' patent rights and without a reasonable basis for believing its conduct is lawful. NASDAQ's infringement is willful and deliberate, making this an exceptional case and entitling Leveraged Innovations to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

29.     By reason of NASDAQ's infringing activities, Leveraged Innovations has suffered, and will continue to suffer, substantial damages in an amount yet to be determined.

## COUNT II: INFRINGEMENT OF THE '192 PATENT BY PROSHARES

30.     Leveraged Innovations incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

31.     ProShares has infringed and continues to infringe the '192 Patent, both directly and indirectly, by making, using, selling, making available for use by others, and/or offering for sale computer systems that incorporate the inventions of the '192 Patent and create leveraged exchanged trade products that are covered by one or more claims of the '192 Patent. ProShares has created at least 121 leveraged ETFs utilizing the inventions of the '192 Patent, including the ProShares UltraPro QQQ, ProShares UltraPro Short QQQ, ProShares Ultra Nasdaq Biotechnology and ProShares UtraShort Nasdaq Biotechnology leveraged ETFs listed on the NASDAQ stock exchange.  Shares in the infringing leveraged ETFs created and managed by ProShares are traded on exchanges in this judicial district, including on the NASDAQ Stock Exchange, and elsewhere.

32. Leveraged Innovations has been and will continue to be injured by ProShares' past and continuing infringement of the '192 Patent and is without adequate remedy at law. Leveraged Innovations is therefore entitled to a permanent injunction restraining and enjoining ProShares and its officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from infringing, and from contributing to and/or inducing the infringement of, the claims of the '192 Patent.

33. ProShares infringes the '192 Patent with express knowledge of Leveraged Innovations' patent rights and without a reasonable basis for believing its conduct is lawful. ProShares' infringement is willful and deliberate, making this an exceptional case and entitling Leveraged Innovations to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

34. By reason of ProShares' infringing activities, Leveraged Innovations has suffered, and will continue to suffer, substantial damages in an amount yet to be determined.

**PRAYER FOR RELIEF**

WHEREFORE, Leveraged Innovations respectfully requests that the Court grant the following relief:

a) enter judgment that NASDAQ infringes and has infringed the Patents-in-Suit;

b) enter judgment that ProShares infringes and has infringed the '192 Patent;

c) declare that Defendants' infringement of the Patents-in-Suit has been willful;

d) enter a preliminary and permanent injunction enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from infringing, and from contributing to and inducing the infringement of, the claims of the Patents-in-Suit;

e)   enter judgment awarding Leveraged Innovations damages from Defendants adequate to compensate for Defendants' infringement, including interest and costs;

f)   declare this case to be exceptional and enter judgment awarding Leveraged Innovations increased damages under 35 U.S.C. § 284 and its reasonable attorney fees and costs under 35 U.S.C. § 285; and

g)   award Leveraged Innovations such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Leveraged Innovations respectfully requests a trial by jury on all issues so triable in accordance with Fed. R. Civ. P. 38.

Dated: May 25, 2011

*/s/ Chad Johnson*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Chad Johnson (CJ-3395)
Joshua Raskin (JR-4613)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Chad@blbglaw.com
Joshua@blbglaw.com
Phone: (212) 554-1400
Fax: (212) 554-1444

COUNSEL FOR LEVERAGED INNOVATIONS, LLC

12

# EXHIBIT 1

US007698192B2

## (12) United States Patent
### Kiron et al.

(10) Patent No.: **US 7,698,192 B2**
(45) Date of Patent: *Apr. 13, 2010

(54) **OPEN END MUTUAL FUND SECURITIZATION PROCESS**

(75) Inventors: **Kenneth Kiron**, 309 W. 57th St. Apt. 1707, New York, NY (US) 10019; **Kevin S. Bander**, Chicago, IL (US)

(73) Assignee: **Kenneth Kiron**, Teaneck, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 2075 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/839,888**

(22) Filed: **Apr. 20, 2001**

(65) **Prior Publication Data**
US 2003/0009405 A2      Jan. 9, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/579,801, filed on May 26, 2000, now abandoned, which is a continuation of application No. 09/140,868, filed on Aug. 27, 1998, now Pat. No. 6,088,685, which is a continuation of application No. 08/542,431, filed on Oct. 12, 1995, now Pat. No. 5,806,048.

(51) **Int. Cl.**
  *G06Q 40/00*    (2006.01)
(52) **U.S. Cl.** .......................... 705/36; 705/35
(58) **Field of Classification Search** ............ 705/36
  See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 4,597,046 A | 6/1986 | Musmanno et al. ......... 364/408 |
| 4,615,001 A | 9/1986 | Hudgins, Jr. ............... 364/200 |
| 4,642,768 A | 2/1987 | Roberts ..................... 364/408 |
| 4,674,044 A | 6/1987 | Kalmus et al. |
| 4,751,640 A | 6/1988 | Lucas et al. |
| 4,876,648 A | 10/1989 | Lloyd ........................ 364/408 |
| 4,914,587 A | 4/1990 | Clouse ....................... 364/408 |
| 4,953,085 A | 8/1990 | Atkins ....................... 364/408 |
| 5,101,353 A | 3/1992 | Lupien et al. |
| 5,121,495 A | 6/1992 | Nemes ....................... 395/600 |

(Continued)

OTHER PUBLICATIONS

SPIR Trust Series 1, Application for Orders Under Section 6(c) of the Investment Company Act of 1940.

(Continued)

*Primary Examiner*—Thu Thao Havan
(74) *Attorney, Agent, or Firm*—James P. Muraff; Neal, Gerber & Eisenberg LLP

(57) **ABSTRACT**

A mutual fund securitization process permitting the trading of open end mutual funds and linked derivative securities on or off the floor of a National Securities Exchange. The targeted individual open end mutual fund or group of open end mutual funds, selected through a screening process is securitized through the creation of a new, separate security. This new security is preferably a "closed end fund of funds" and linked derivative securities, which synthetically replicate the statistical relationship of the defined individual or group of open end mutual funds. The maintenance of financial records for the new security is maintained by electronically storing dividend, capital gains and income received from the open end funds which have been invested in, and calculating pro-forma financial statements to disseminate to shareholders and all relevant parties.

**82 Claims, 3 Drawing Sheets**



## U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,126,936 A | 6/1992 | Champion et al. |
| 5,132,899 A | 7/1992 | Fox .......................... 364/408 |
| 5,189,608 A | 2/1993 | Lyons et al. ............... 364/408 |
| 5,193,056 A | 3/1993 | Boes .......................... 364/408 |
| 5,206,803 A | 4/1993 | Vitagliano et al. .......... 364/408 |
| 5,214,579 A * | 5/1993 | Wolfberg et al. .......... 705/36 R |
| 5,557,517 A | 9/1996 | Daugherty, III ............ 364/408 |
| 5,644,727 A | 7/1997 | Atkins |
| 5,671,363 A | 9/1997 | Cristofich et al. |
| 5,812,987 A | 9/1998 | Luskin et al. |
| 6,088,685 A * | 7/2000 | Kiron et al. ............... 705/36 R |
| 2002/0046154 A1 | 4/2002 | Pritchard |

## OTHER PUBLICATIONS

SPIR Trust Series 1, First Amended and Restated Application for Orders Under Section 6(c) of the Investment company Act of 1940.
Form S-6 (EL24) for registration under the Securities Act of 1933.
Amendment No. 1 to Form S-6 (EL24A) for registration under the Securities Act of 1933.
Amendment No. 2 to Form S-6 (EL24C) for registration under the Securities Act of 1933.
Amendment No. 3 to Form S-6 for registration under the Securities Act of 1933.
Dialog Abstract: File 256, Acc# 01203769; Macro World Investors 5.0; Macro World Research Corp; Released: Jan. 1988.
Hill; "Program Trading of Equities: Renegade or Mainstream?"; *Business Horizons*; vol. 32 No. 6; p. 47(9); Nov.-Dec. 1989; Dialog: File 148, Acc# 04165265.
Dialog Abstract: File 16, Acc# 03222677; Prime Asset Mgmt; *Pensions & Investments*; May 20, 1991; p. 69.
Cohen; "Canada: First Marathon Inc. Make Fund Tracking User-Friendly"; *Financial Post (FINPO)*; Sep. 14, 1992; p. 20; Dialog File 772, Acc# 09062758.
Gitter, "Investing, For the Passive-Aggressive"; *Financial Planning*; Feb. 1995; p. 59; Dialog: File 16, Acc# 05639063.
Dialog Abstract: File 256, Acc# 01561525; Principia for Closed-End Funds 1.0; Morningstar Inc. Released: Jul. 1995.
Schramm; "Index Managers Get Active"; *Pensions 7 Investments*; Oct. 16, 1995; p. 3; Dialog: File 16, Acc# 05784105.
Duff, "Index Funds with a Twist Can Be Market Beaters"; *Money*; vol. 24 No. 10; p. 53; Oct. 1995; Dialog: File 15, Acc# 01091136.
Opinion and Order of U.S. District Judge Shira A. Scheindlin, dated Feb. 4, 2003, in American Stock Exchange, LLC vs. Mopex, Inc., 00 Civ 5943 (SAS), granting Plaintiff's Motion for Summary Judgment.
Application pursuant to Section 6(c) of The Investment Company Act of 1940 for an Order Granting Exemption From the Provisions of Sections 4(2) and 22(c) of the Act, and Rule 22c-1 thereunder, and for an Order Pursuant to Section 11(a) and 11(c) of the Act Approving the Exchange of Shares of an Open-End Management Investment Company for Units of a Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Capital Market Fund, Inc. and SuperShare Services Corporation (Apr. 3, 1989).
First Amended and Restated Application pursuant to Section 6(c) of the Investment Company Act of 1940 for an Order Granting Exemption from the Provisions of Sections 4(2), 18(f)(1) and (i), 22(c), Rule 22c-1 and for an Order pursuant to Sections 11(a) and 11(c) of the Act Approving the Exchange of Shares of an Open-End Management Investment Company for Units of a Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Capital Market Fund, Inc. and SuperShare Services Corporation (Sep. 7, 1989).
Second Amended and Restated Application pursuant to Section 6(c) of the Investment Company Act of 1940 for an Order Granting Exemption from the Provisions of Sections 4(2), 22(c), Rule 22c-1 thereunder, and 22(d) of the Act and for an Order pursuant to Sections 11(a) and 11(c) of the Act Approving the Exchange of Shares of an Open-End Management Investment Company for Units of a Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Captial Market Fund, Inc. and SuperShare Services Corporation (Feb. 6, 1990).
Third Amended and Restated Application pursuant to Section 6(c) of the Investment Company Act of 1940 for an Order Granting Exemption from the Provisions of Sections 4(2), 22(c), Rule 22c-1 thereunder, and 22(d) of the Act, and for an Order pursuant to Sections 11(a) and 11(c) of an Open-End Management Investment Company for Units of a Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Capital Market Fund, Inc. and SuperShare Services Corporation (Apr. 2, 1990).
Fourth Amended and Restated Application pursuant to Section 6(c) of the Investment Company Act of 1940 for an Order Granting Exemption from the Provisions fo Sections 4(2), 22(c), Rule 22c-1 thereunder, and 22(d) of the Act, and for an Order pursuant to Sections 11(a) and 11(c) of the Act Approving the Exchange of Shares of an Open-End Management Investment Company for Units of an Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Capital Market Fund, Inc. and SuperShare Services Corporation (Jul. 3, 1990).
Fifth Amended and Restated Application pursuant to Section 6(c) of the Investment Company Act of 1940 for an Order Granting Exemption from the Provisions of Sections 4(2), 22(c), Rule 22c-1 thereunder, and 22(d) of the Act, and for an Order pursuant to Sections 11(a) and 11(c) of the Act Approving the Exchange of Shares of an Open-End Management Investment Company for Units of a Unit Investment Trust, by the SuperTrust for Capital Market Fund, Inc. Shares, Capital Market Fund, Inc. and SuperShare Services Corporation (dated Jul. 6, 1990).
Notice of Application for Exemption under the Investment Company Act of 1940 by the Super Trust Trust of Capital Market Fund, Inc., Inv. Co. Act Rel. No. IC-17613 (Jul. 25, 1990).
Order Denying a Hearing Request, Granting a Conditional Exemption Under Section 6(c) of the Act from Sections 4(2) and 22(d) of the Act and Rule 22c-1 thereunder, and Approving an Offer of Exchange Under Sections 11(a) and 11(c) of the Act, in the Matter of the SuperTrust Trust for Capital Market Fund, Inc. Shares, et al., Inv. Co. Act Rel. No. IC-17809 (Oct. 19, 1990).
SEC No-Action Letter re The SuperTrust Trust for Capital Market Fund, Inc. Shares (Jun. 24, 1992), including the SuperTrust Trust for Capital Market Fund, Inc. Shares' No-Action Request (Mar. 30, 1992).
Prospectus, The SuperTrust Trust for Capital Market Fund, Inc., dated Mar. 6, 1992.
Registration Statement (Form N-1A) under the Investment Company Act of 1940, of Capital Market Fund, Inc. (Mar. 6, 1992).
Peter Tufano & Barbara B. Kyrillos, *Leland O'Brien Rubinstein Associates Incorporated: SuperTrust*, Harvard Business School case study 294-050 (Jun. 6, 1994).
Application for Orders Under section 6(c) of the Investment Company Act of 1940 exempting the SPIR Trust, Series I (and any additional and similar Series of the SPIR Trust), and SPIR Services Corporation, as Sponsor, from the Provisions of sections 4(2), 12(d)(3), 14(a), 22(c), 22(d) and 26(a)(2)(C) of said Act and from rules 12d3-1 and 22c-1 promulgated thereunder (Jun. 26, 1990).
First Amended and Restated Application for Orders Under section 6(c) of the Investment Company Act of 1940 exempting the SPIR Trust, Series I (and any additional and similar Series of the SPIR Trust), and SPIR Services Corporation, as Sponsor, from the Provisions of sections 4(2), 14(a), 22(d) and 26(a)(2)(C) of said Act and from rule 22c-1 promulgated thereunder (Feb. 6, 1991).
Second Amended and Restated Application for Orders Under section 6(c) of the Investment Company Act of 1940 exempting the SPDR Trust, Series I and PDR Services Corporation, as Sponsor, from the Provisions of sections 4(2), 14(a), 17(d), 22(d), 22(e), 24(d) and 26(a)(2)(C) of said Act and from rule 22c-1 promulgated thereunder and under section 17(b) exempting the Trust from the provisions of sections 17(a)(1) and 17(a)(2) of said Act (Feb. 28, 1992).
Third Amended and Restated Application for Orders Under section 6(c) of the Investment Company Act of 1940 exempting the SPDR Trust, Series I (and any additional and similar Series of the SPDR Trust), and PDR Services Corporation, as Sponsor, from the Provisions of sections 4(2), 14(a), 17(a)(1) and 17(a)(2), 22(d), 22(e), 24(d) and 26(a)(2)(C) of said Act and from rule 22c-1 promulgated thereunder and under section 17(b) exempting the Trust from the

provisions of sections 17(a)(1) and 17(a)(2) of said Act and under rule 17d-1 from the provisions of section 17(d) (Jun. 8, 1992).

Fourth Amended and Restated Application for Orders Under section 6(c) of the Investment Company Act of 1940 exempting the SPDR Trust, Series I (and any additional and similar Series of the SPDR Trust), and PDR Services Corporation, as Sponsor, from the Provisions of sections 4(2), 14(a), 17(a)(1), 17(a)(2), 22(d), 22(e), 24(d) and 26(a)(2)(C) of said Act and from rule 22c-1 promulgated thereunder, under section 17(a)(1) and 17(a)(2) of said Act and under rule 17d-1 granting relief from the provisions of section 17(d) (Aug. 7, 1992).

Notice of Filing of Proposed Rule Change by the American Stock Exchange, Inc. Relating to Portfolio Depositary Receipts, Exchange Act Release No. 34-31039 (Aug. 20, 1992).

Order Approving Proposed Rule Change by the American Stock Exchange, Inc. Relating to Portfolio Depositary Receipts, Exchange Act Release No. 34-31591 (Dec. 11, 1992).

Notice of Application for Order under the Investment Company Act of 1940, by the SPDR Trust, Series 1, Rel. No. 1C-18959 (Sep. 23, 1992).

In re The Matter of SPDR Trust, Series 1 PDR Services Corporation, Conditional Order under Sections 6(c) and 17(b) of the Act Exempting Applicants From Sections 4(2), 14(a), 17(a), 22(d), 22(e), 24(d), 26(a)(2)(C), and Rule 22c-1, and under Rule 17d-1 Permitting Applicants to Engage in Certain Affiliated Transactions Otherwise Prohibited by Section 17(d) and Rule 17d-1 (Oct. 26, 1992).

Prospectus, Standard & Poor's Depositary Receipts, SPDR Trust Series 1, dated Jan. 22, 1993 (Feb. 3, 1993).

Prospectus, Standard & Poor's Depositary Receipts, SPDR Trust Series 1, dated May 20, 1994.

Nils H. Hakansson, *The Purchasing Power Fund: A New Kind of Financial Intermediary*; FIN. ANALYSTSJ,49,(Nov.-Dec. 1976).

Nils H. Hakansson, *Welfare Aspects of Options and Supershares*, XXXIII No. 3 J. of FIN. 759 (Jun. 1978).

Prospectus, Put and Call Options and Index Participations, by The Options Clearing Corporation, dated Apr. 21, 1989.

Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting The Germany EuroTrust Trust, Series 1 of The EuroTrust Trusts, EuroFund, Inc., Deutsche Bank Securities Corporation, as Adviser, and SuperShare Services Corporation, as Sponsor, from the provisions of Sections 4(2), 17(a)(1), 17(a)(2), 22(d), 24(d) and 26(a)(2)(C) of said Act and from Rule 22c-1 promulgated thereunder, under Section 17(b) exempting the Trust, the Fund, the Adviser and the Sponsor from the provisions of Sections 17(a)(1) and 17(a)(2) of the Act and for an Order pursuant to Sections 11(a) and 1.1(c) of the Act approving the exchange of shares of the initial series of the Fund for units of the Germany EuroTrust Trust, by The Germany EuroTrust Trust, Series 1 of the EuroTrust Trusts, EuroFund, Inc., Deutsche Bank Securities Corporation, as Adviser, and SuperShare Services Corporation, as Sponsor (Aug. 19, 1994).

Foreign Fund, Inc., Application for Orders under section 6(c) of the Investment Company Act of 1940 exempting applicant from the provisions of sections 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e), and rule 22c-1 thereunder, and under section 17(b) exempting applicant from sections 17(a)(1) and 17(a)(2) of such Act (Sep. 19, 1994).

Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting Foreign Fund, Inc. from the provisions of Section 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e) of said Act, and Rule 22c-1 promulgated thereunder, and under Section 17(b) exempting Foreign Fund, Inc. from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act (Sep. 19, 1994).

Amendment No. 1 to the Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting Foreign Fund, Inc. from the provisions of Section 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e) of said Act, and Rule 22c-1 promulgated thereunder, and under Section 17(b) exempting Foreign Fund, Inc. from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act (Jan. 5, 1995).

Barclays Global Fund Advisors and BGI Exchange Traded Fund and its Index Series—Application for an Order under Section 6(c) of the Investment Company Act of 1940 for an exemption from Sections 2(a)(32), 5(a)(1), and 22(d) and 22(e) of the Act and Rule 22c-1 under the Act and under Sections 6(c) and 17(b) of the Act for an exemption from Sections 17(a)(1) and (a)(2) of the Act (as filed with the SEC on Apr. 30, 1999).

Barclays Global Fund Advisors and BGI Exchange Traded Fund and its Index Series—Application for an Order under Section 6(c) of the Investment Company Act of 1940 for an exemption from Sections 2(a)(32), 5(a)(1), and 22(d) and 24(d) of the Act and Rule 22c-1 under the Act and under Sections 6(c) and 17(b) of the Act for an exemption from Sections 17(a)(1) and (a)(2) of the Act (as filed with the SEC on Apr. 30, 1999).

In the matter of Foreign Fund, Inc. and BZW Barclays Global Fund Advisors, File No. 812-10334; Application for an Order of Exemption under Section 17(d) of the Investment Company Act of 1940 (the "1940 Act") and Rule 17d-1(a) thereunder pursuant to Rule 17d-1(b) under the 1940 Act (as received by the SEC on Sep. 13, 1996).

In the matter of Web Index Fund, Inc. and Barclays Global Fund Advisors, File No. 812-10334; Amendment No. 2 to the Application for an Order of Exemption under Section 17(d) of the Investment Company Act of 1940 (the "1940 Act") and Rule 17d-1(a) thereunder pursuant to Rule 17d-1(b) under the 1940 Act (Mar. 10, 1997).

Amendment No. 4 to the Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting Foreign Fund, Inc. from the provisions of Sections 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e) of said Act, and Rule 22c-1 promulgated thereunder, and under Section 17(b) exempting Foreign Fund, Inc. from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act (as received by the SEC on Feb. 20, 1996).

Gastineau, Gary L., *An Introduction to Exchange-Traded Funds (ETFs)*, Nuveen Investments; Feb. 8, 2001, pp. 1-12.

Application for Orders under Section 6(c) of the Investment Company Act of 1940, as amended, exempting WEBS Index Fund, Inc. from the provisions of Sections 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e) of said Act, and Rule 22c-1 promulgated thereunder, and under Section 17(b) exempting WEBS Index Fund, Inc. from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act (as received by the SEC on Aug. 14, 1997).

Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting The Germany EuroTrust Trust, Series 1 of The EuroTrust Trusts, EuroFund, Inc., Deutsche Bank Securities Corporation, as Adviser, and SuperShare Services Corporation, as Sponsor, from the provisions of Sections4(2), 17(a)(1), 17(a)(2), 22(d), 24(d) and 26(a)(2)(C) of said Act and Rule 22c-1 promulgated thereunder, under Section 17(b) exempting the Trust, the Fund, the Adviser and the Sposor from the provisions of Sections 17(a)(1) and 17(a)(2) of the Act and for an Order pursuant to Setions 11(a) and 11(c) of the Act approving the exchange of shares of the initial series fo the Fund for unit of the Germany EuroTurst Trust (as received by the SEC on Aug. 19, 1994).

First Amended and Restated Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting The EuroTrust Trust, its initial two Series, The Germany EuroTrust Trust and The UK EuroTrust Trust, EuroFund, Inc., Deutsche Bank Securities Corporation, as Adviser, and SuperShare Services Corporation, as Sponsor, from the provisions of Sections 4(2), 17(a)(1), 17(a)(2), 22(d) and 26(a)(2)(C) of said Act and from Rule 22c-1 promulgated thereunder under Section 17(b) exempting the Trusts, the Fund, the Adviser and the Sponsor from the provisions of Sections 17(a)(1) and 17(a)(2) of the Act and for an Order pursuant to Sections 11(a) and 11(c) of the Act approving the exchange of shares of the series of the Fund for units of the Trusts (as received by the SEC on Oct. 28, 1994).

Second Amended and Restated Application for Orders (i) under Section 6(c) of the Investment Company Act of 1940 exempting, as the case may be, The EuroTrust Trust, its initial two trusts, The Germany EuroTrust Trust and The UK EuroTrust Trust, EuroFund, Inc. and its initial two Series, the German Index Series and the UK Index Series; Deutsche Bank Securities Corporation, as Adviser, and SuperShare Services Corporation, as Sponsor, from the provisions of Sections 2(a)(32), 4(2), 5(a)(1), 17(a)(1), 17(a)(2), 22(d), 22(e) and 26(a)(2)(C) of said Act and from Rule 22c-1 promulgated thereunder; (ii) pursuant to Sections 11(a) and 11(c) of the Act approving the exchange of shares of the Fund for units of the Trusts; and (iii) under Section 17(b) exempting the Trusts, the Fund, the Adviser and the

Sponsor from the provisions of Sections 17(a)(1) and 17(a)(2) of the Act and (as received by the SEC on Nov. 30, 1994).

SEC Form N-1A, Registration Statement Under the Securities Act of 1933, Pre-Effective Amendment No. 1, and Registration Statement under the Investment Company Act of 1940, Amendment No. 1, of Foreign Fund, Inc. (as filed with the SEC on Dec. 14, 1995).

SEC Form N-1A, Registration Statement Under the Securities Act of 1933, Pre-Effective Amendment No. 1, and Registration Statement under the Investment Company Act of 1940, Amendment No. 1, of Foreign Fund, Inc. (as filed with the SEC on Dec. 14, 1995) (Marked to Show Changes).

SEC Form N-1A, Registration Statement Under the Securities Act of 1933, Pre-Effective Amendment No. 3, and Registration Statement under the Investment Company Act of 1940, Amendment No. 3, of Foreign Fund, Inc. (as filed with the SEC on Mar. 6, 1996).

American Stock Exchange, Stock Index Options, Proposed Contract Specifications, S&P MidCap Index Options, Dec. 2, 1991.

Standard & Poor's Depositary Receipts™, *SPDR™ User's Guide*, PDR Services Corporation, Jan. 1993.

Amendment No. 1 to the Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting the MidCap SPDR Trust, Series 1 and PDR Services Corporation, as Sponsor, from the provisions of Sections 4(2), 14(a), 17(a)(1), 17(a)(2), 22(d), 22(e), 24(d) and 26(a)(2)(C) of said Act and from Rule 22c-1 promulgated thereunder, under Section 17(b) exempting the Sponsor and the Trust from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act and under Rule 17d-1 granting relief from the provisions of Section 17(d) and Rule 17d-1 (executed Jul. 13, 1994).

American Stock Exchange, Stock Index Options, Contract Specification, S&P MidCap Index Options, Jan. 23, 1992.

Information Circular to Members and Member Organizations, Senior and Compliance Registered Options Principals, and Registered Options Principals from Howard A. Baker, Senior Vice President, AMEX Derivative Securities, announcing a new listing: Standard & Poor's MidCap 400 Depositary Receipts™ with trading to begin on May 4, 1995. Dated: Apr. 28, 1995.

Standard & Poor's Depositary Receipts ("SPDR") Trust Series 1 and Any Subsequent and Similar Series of the SPDR Trust, Standard Terms and Conditions of Trust, dated as of Jan. 1, 1993 between PDR Services Corporation, as Sponsor, and State Street Bank and Trust Company, as Trustee, effective Jan. 22, 1993.

Prospectus: Toronto 35 Index Participation Units dated Nov. 20, 1989.

Gastineau, Gary, "Exchange-Traded vs. OTC Derivatives Markets," *Financial Derivatives and Risk Management*, Issue Three, Nov. 1995.

Section 7, Special Article: "Minimizing Cash Drag With S&P 500 Index Tools" by Goldman Sachs.

Standard & Poor's Depositary Receipts, "SPDR User's Guide," PDR Services Corporation, 1993.

*The Future of Exchange Traded Funds, An Emerging Alternative to Mutual Funds*, Financial Research Corporation May 31, 2000.

Gastineau, Gary L., "A Short History of Program Trading," *Financial Analysts Journal*, Sep.-Oct. 1991, pp. 4-7.

Angel, James J., et.al., "Comparison of Two Low-Cost S&P 500 Index Funds," reprinted from *Derivatives Quarterly* Spring, 1996.

Gastineau, Gary L, et al., Exchange-Traded Equity Funds—Genesis, Growth, and Outlook, pp. 121-141.

Product Description for Standard & Poor's Depositary Receipts—SPDRs®, pp. 1-4.

Standard & Poor's Depositary Receipts, "SPDR™ Traded on the American Stock Exchange, Ticker Symbol SPY,", PDR Services Corporation, 1993, and "The SPDR™ Report," Aug. 1994.

"Main Marketing Message About SPDRs," Educational Material.

Standard & Poor's Depositary Receipts™, Specifications, Symbol: SPY, American Stock Exchange, May 16, 1994.

Standard and Poor's Depositary Receipts™ ("SPDRs")™, SPDR Trust Series 1, A Unit Investment Trust, Annual Report, Dec. 31, 1994.

Standard and Poor's Depositary Receipts™ ("SPDRs")™, SPDR Trust Series 1, A Unit Investment Trust, Annual Report, Dec. 31, 1995.

Telefacsimile Transmission from James Curtis, Division of Investment Management, U.S. Securities and Exchange Commission, to Paul J. McElroy, Sullivan & Cromwell, forwarding the Notice of Application for Exemption Under the Investment Company Act of 1940, of Foreign Fund, Inc., BZW Barclays Global Fund Advisors and Funds Distributor, Inc., dated Feb. 7, 1996.

Order of the U.S. Securities and Exchange Commission, dated Mar. 5, 1996, granting the application for exemption under the Investment Company Act of 1940 of Foreign Fund, Inc., BZW Barclays Global Fund Advisors and Funds Distributor, Inc.

Letter dated Oct. 17, 1995, from Kevin C. Rupert, Accountant, U.S. Securities and Exchange Commission, to Paul J. McElroy, Sullivan & Cromwell, regarding Foreign Fund, Inc., and containing comments on the registration statement on Form N-1A filed on behalf of Foreign Fund, Inc.

Letter dated Dec. 14, 1995, from Paul J. McElroy, Sullivan & Cromwell, to Kevin C. Rupert, Accountant, U.S. Securities and Exchange Commission, regarding comments made by K. Rupert in his letter of Oct. 17, 1995, and regarding the filing of a Pre-Effective Amendment No. 1 to the Fund's Registration Statement on Form N-1A.

Form N-1A, Pre-Effective Amendment No. 3, filed by Foreign Fund, Inc. on Mar. 5, 1996, with the U.S. Securities and Exchange Commission.

Exhibits to Form S-6, Pre-Effective Amendment No. 3 to Registration Statement of The Supertrust Trust for Capital Market Fund, Inc. Shares.

Brochure: SuperTrust, Subscription Period, 1992.

"Introduction to The SuperTrust," SSC Distribution Services, Inc., 1991.

"The SuperTrust Summary Graphics," SSC Distribution Services, Inc., 1991.

Form N-1A, Post-Effective Amendment No. 3 and Registration Statement Under the Investment Company Act of 1940, Amendment No. 7, of Capital Market Fund, Inc., as filed with the SEC on Mar. 1, 1993.

*IDD (Investment Dealers Digest)*, Nov. 30, 1992, pp. 1-50.

*Federal Register*, Notices, vol. 55, No. 114, Wednesday, Jun. 13, 1990, pp. 24016-24018.

"Distributor of SuperTrust Shares Seeks No-Action Position," *The SEC Today*, Wednesday Jul. 1, 1992, vol. 92-127, pp. 1-2.

"The SuperTrust Subscription Period," SSC Distribution Services, Inc., Jun. 1992, pp. 1-8.

Brochure for MidCap SPDRs—Standard & Poor's MidCap 400 Depositary Receipts.

Advertisement for MidCap SPDR, Standard & Poor's MidCap 400 Depositary Receipts.

American Stock Exchange News Release, Apr. 21, 1995. "Joel Lovett Elected to Sixth Year as Vice Chairman of AMEX's Board of Governors".

Newspaper Articles: Kristof, Kathy M., "Add 'Spiders' to Growing Web of Investment," *Los Angeles Times*, Aug. 25, 1995; Metz, Robert, "Spinning Profits Using SPDRs," *Houston Chronicle*, Aug. 2, 1995; Metz, Robert, "Snare Profits in Your Web With SPRDs," *Tulsa World*, Aug. 6, 1995.

SES Docket, vol. 58, No. 10, pp. 1707-1708 (Jan. 18, 1995).

*Federal Register*, Notices, vol. 59, No. 248, Wednesday, Dec. 28, 1994, 66982-66985.

Cochran, Thomas N., "The Striking Price."

Capital Market Fund, Inc. Annual Report, Oct. 31, 1994, pp. 1-16.

Prospectus: The SuperTrust™ Trust for Capital Market Fund. Inc. Shares, Feb. 28, 1995.

Prospectus: Capital Market Fund, Inc., Feb. 28, 1995.

The SuperTrust™ Trust for Capital Market Fund, Inc. Shares, Annual Report, Oct. 31, 1994.

Capital Market Fund, Inc., Annual Report, Oct. 31, 1994.

SCC SuperUnits™, Proposed Specifications, American Stock Exchange, Mar. 16, 1992.

"Equity Derivatives—Applications in Corporate Finance and Fund Management," CIBC Wood Gundy School of Financial Products.

MidCap SPDR Trust, Series 1 and PDR Services Corporation, Amendment No. 1 to Application for Orders under section 6(c) of the Investment Company Act of 1940 exempting the MidCap SPDR

Trust, Series 1 and PDR Services Corporation, as Sponsor, from the provisions of sections 4(2), 14(a), 17(a)(1), 17(a)(2), 22(d), 22(e), 24(d) and 26(a)(2)(C) of said Act and from rule 22c-1 promulgated thereunder, under section 17(b) exempting the Sponsor and the Trust from the provisions of sections 17(a)(1) and 17(a)(2) of said Act and under rule 17d-1 granting relief from the provisions of section 17(d) and rule 17d-1 (Jan. 13, 1994).

SEC Docket, vol. 58, No. 20, pp. 2765-2772 (Mar. 24, 1995).

In the Matter of MidCap SPDR Trust, Series 1, File No. 1-13730, Order Declaring Registration Effective Pursuant to Section 12(d) of the Securities Exchange Act of 1934, as Amended, U.S. Securities and Exchange Commission, Apr. 27, 1995.

In the Matter of PDR Services Corporation, Sponsor of MidCap SPDR Trust, Series 1, Order Pursuant to Section 8(a) of the Securities Act of 1933 as Amended, Declaring the Registration Statement Effective, U.S. Securities and Exchange Commission, Apr. 27, 1995.

Brochure: Standard & Poor's MicDap 400 Depositary Receipts, Product Description, PDR Services Corporation, 1995.

*Federal Register*, Notices, vol. 60, No. 62, Friday, Mar. 31, 1995, 16686-16690.

Brochure: Standard & Poor's MidCap 400 Depositary Receipts™, 400 Stocks, One Easy Investment, PDR Services, 1995.

American Stock Exchange Home Page; The American Stock Exchange, 1995.

American Stock Exchange News Release, Apr. 27, 1995, "MidCap 400 'Spiders' to Spin Their Own Web at the AMEX".

Expert Report of C. Michael Carty dated Apr. 5, 2002.

Rebuttal Report of C. Michael Carty dated May 10, 2002.

Fifth Amended and Restated Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting The CountryBaskets™ Index Fund, Inc. and its initial nine Series named herein the Advisor and the Distributor from the provisions of Sections 2(a)(32), 5(a)(1), 17(a)(1), 17(a)(2), 22(d) and 22(e) of said Act, and from Rule 22c-1 promulgated thereunder, and under Section 17(b) from the provisions of Sections 17(a)(1) and 17(a)(2) of the Act dated Jun. 26, 1995.

Affidavit of Clifford J. Weber, dated Aug. 30, 2002, filed in American Stock Exchange, *LLC* vs. *Mospex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Supplemental Affidavit of Clifford J. Weber, dated Oct. 10, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Expert Witness Report of Clifford J. Weber, dated Apr. 2, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Expert Report of Kathryn B. McGrath, dated Apr. 3, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Rebuttal Expert Report of Kathryn B. McGrath, dated May 17, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Expert Report of Harry F. Manbeck, Jr., dated Apr. 5, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Rebuttal Expert Report of Harry F. Manbeck, Jr., dated May 7, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Expert Report of Donald Banner, dated May 14, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Expert Witness Report of Gary L. Gastineau, dated Mar. 28, 2002, filed in American Stock Exchange, *LLC* vs. *Mopex, Inc.*, Civil Action No. 00 Civ. 5943(SAS)(MHD).

Application for Orders under Section 6(c) of the Investment Company Act of 1940 exempting Foreign Fund, Inc. from the provisions of Sections 2(a)(32), 5(a)(1), 17(a)(1) and 17(a)(2), 22(d) and 22(e) of said Act, and Rule 22c-1 promulgated thereunder, and under Section 17(b) exempting Foreign Fund, Inc. from the provisions of Sections 17(a)(1) and 17(a)(2) of said Act, dated Sep. 15, 1994.

Amendment No. 2 to the Application for an Order of Exemption Under Section 17(d) of the Investment Company Act of 1940 (The "1940 Act") and Rule 17d-1(a) Thereunder Pursuant to Rule 17d-1(b) Under the 1940 Act, in the matter of Webs Index Fund, Inc. and Barclays Global Fund Advisors, dated Mar. 14, 1997.

* cited by examiner





FIG. 1B